of the Office of the Attorney General. When you're ready, Mr. Hawkins, we'll hear from you first. Thank you, Your Honor. May it please the court. There are two independent reasons to reverse the decision below and render judgment for the state. First, as a matter of law, Alex Luna's decision to forego lesser-included offense instructions was not ineffective. Second, even if Luna was ineffective, there is no evidence that Mejia suffered any prejudice. Both of those two issues must be examined through AEDPA's doubly deferential lens. And that level of deference was recently described by the Supreme Court as apex deference. I'd like to ask you, Mr. Hawkins, is it your position that AEDPA deference applies to both prongs of Strickland, in this case, deficient performance and prejudice? Yes, I think that's correct, Your Honor, because the state court made a finding as to both of those, and so AEDPA deference would apply. Well, I've read the state court opinion, and it's – I understand it says – it finds, you know, that Mr. Luna provided effective assistance of counsel. It doesn't break down the prongs, but is – in your view, that doesn't matter, still at the deference as to both prongs? I think that's correct, Judge Duncan. Strickland speaks of ineffective assistance of counsel and breaks it out into two prongs, a performance prong and a prejudice prong. If the state court had perhaps just mentioned performance, perhaps then prejudice would not be entitled to AEDPA deference. But by referring to ineffective assistance of counsel, or rather effective assistance of counsel, I think that implicates both prongs of Strickland. Okay. And I'll ask the other side if they agree with that or not, but I just wanted to understand their position. Let me ask another sort of procedural question. If we were to agree with you on the lesser-included offense of manslaughter but disagree with you on the sudden passion, would the effect be a new sentencing trial or whatever versus a full retrial? Or what happens then? Because the said passion only goes to the sentence, right? It only came up in the sentencing phase. That's correct, Judge Hayes. If the court were to affirm the grant of habeas relief as to the sudden passion issue, I think the proper result would be remand to have a new trial at the sentencing phase. But I think the conviction, the guilty verdict, would be unaffected by that. And I guess in habeas language then it would be that the habeas order would have to be rewritten to state that the sentence is unconstitutional but not the conviction, so the conviction would remain. I think that's correct, Judge Hayes. Because then we can't actually order a new trial per se that goes to the state court, and then they decide, which typically means a new trial. But it would just be a new sentence. We'd be convicted, and now the question would be a sentencing phase involving the sudden passion argument. That's correct, Judge Hayes. I think that would be the proper procedure. For the reasons I'll set out, I think that that would not be the correct thing for the court to do. Thank you, Judge Hayes. At all levels. I'd like to explain both the performance and the prejudice prongs in turn if I may. First, Alex Luna was not ineffective. It is black-letter law in this court that a defense attorney is not incompetent merely because he pursues an all-or-nothing strategy. This court held in Drury and again in Shankland that a defense lawyer's decision to forego a lesser-included offense instruction does not establish ineffective assistance of counsel under Strickland. Now that is so because lesser-included offense instructions carry double-edged consequences. Now this case is, I think, the perfect illustration of why that's true. The record shows that even before he was arrested, Mejia claimed that he acted in self-defense on the basis that he thought Torres had a gun. Mejia never altered that view. So Alex Luna pursued a self-defense strategy from the outset starting with Vordire where he planted the seeds of a self-defense acquittal by asking jurors about their willingness to accept a self-defense theory. Mejia took the stand of his own volition and testified extensively that Torres had a gun and that Mejia reasonably feared for his life. If the jury had accepted that self-defense theory, the result would have been a full acquittal. Now under those circumstances, it was entirely reasonable for Alex Luna to forego the lesser-included offense instruction of manslaughter in order to avoid a compromise verdict. As the Seventh Circuit has explained, informing the jurors about X necessarily implies that X is one of the conclusions that can be drawn from the evidence in the case. That's why lesser-included offense instructions are double-edged swords. Moreover, the jury could have found manslaughter inconsistent with Mejia's core self-defense theory and held that against Mejia. The Navarez case that we discuss on page 21 of our brief notes the tension between saying what I did was justified and what I did was an accident. I mean to be clear, Luna could have asked for the lesser-included offense instruction. He wasn't precluded from doing so. That's correct, Judge Jonkin. As a matter of Texas law, you can seek both instructions. We have not contested that. We're simply saying that it was reasonable not to do so. In your view, I think your argument is this is not a case where the defense attorney was under a misapprehension about whether he could, whether it was frivolous or inconsistent with the murder charge to ask for the lesser-included. In other words, is your argument that he didn't make a mistake of law with respect to that? Correct, Judge Jonkin. There is no evidence in this record showing that Alex Luna made any mistake of law. All we have is Alex Luna's affidavit, which indicates that the theory of the trial, the theory of the defense was self-defense, which Mejia himself was promoting from the beginning. I mean typically you don't have a jury full of lawyers, and so this notion that something could be legally consistent to say, well, you intended to do it, man. You planned to do it. You were going to do it. Yeah, maybe you just kind of messed up and did it. While legally you can say that, factually that can be super hard to try a case like that. There's a lot of cases where there's like two theories that you legally could submit, but they're just kind of ridiculous as a lawyer to get up and go, well, he was a terrible fraud peaser, but maybe he was negligent. And an all-or-nothing strategy can make sense. Maybe not in some cases, but in some cases it can. I agree. Isn't that the heart of Strickland? That is, Judge Haynes. I think that's exactly right. And I think that that is the core holding of the Drury case where this court held that an all-or-nothing strategy can be perfectly reasonable, and I think this case bears out exactly what Drury was talking about. I'd like to turn over to the sudden passion instruction. Asking— Yeah, now why is that an all-or-nothing? Tell me about why couldn't that be consistent with the evidence. Well, Your Honor, I think it might not have been consistent with the evidence because the evidence in this case showed that Mejia deliberately armed himself with a deadly weapon for the purpose of going to a fight. He knew there was going to be an altercation outside that bar. He and his companions went to the bar knowing that there would be a fight, and before he went, he armed himself with a knife in anticipation of that fight. Now, the Rivas case that we cite on page 31 of our brief explains the inconsistency that Your Honor is asking about, that sudden passion does not tend to arise in this situation. It involves rage. Yes, exactly. And was there any evidence of rage as opposed to either it was self-defense or he was trying to get a jump on the guy and just get rid of the guy? I don't think there was any testimony regarding rage, Your Honor. Mejia's core testimony was that he was afraid, not that he was angry. He indicated that he wanted to try to protect his younger brother and that when Torres flashed the gun at him, he feared for his life and felt that he had to defend himself. That was his core testimony. Is provocation an essential element of a sudden passion charge? I don't know that provocation specifically is an element of sudden passion. Sudden passion requires the immediate influence of sudden passion and an adequate cause. There's no use of the term provocation in the statute. It's section 19. The sudden passion is you walk in on your spouse having sex with somebody else or something like that, and you intended to kill them, but it was because of this rage that came upon you at this encounter. It's not premeditation in terms of planning for months kind of premeditation. Exactly, Judge Haynes. That's often where you see the sudden passion instruction arises in the hypothetical that you indicated. In a case like this, a case like this does not give rise to sudden passion because he went to a fight armed with a deadly weapon. But what would be – the question really isn't – okay, at the point of the sudden passion, do or don't, you know that your client's been convicted of murder. So we're done with he was afraid or defending himself or whatever. So now you're trying to lessen the outcome, make it as short a sentence as possible. What is inconsistent about arguing sudden passion at that point? Well, in addition to what I just mentioned about how it doesn't actually fit the evidence of arming yourself with a deadly weapon, I don't know that there is anything that's formally inconsistent. But again, the question is not can we come up with a better idea for Alex Luna? Can we come up with a better theory that he might have pursued? The question is not would sudden passion have been better. The question is, is what Alex Luna did incompetent? Yeah, but that's what I'm asking. If you have – I have this in my hand, and this will get me 10 years off my client's sentence, and there's no reason not to use it, and I don't use it, that's pretty darn incompetent it sounds like to me. But if there's some problem, like if I use it, then something else could happen over here and he could end up with 10 years more, then it's strategic. So that's my question. If there is no harm, if you will, in asserting the sudden passion, then it's not double-edged. It's one-edged, and it's a good old sword because maybe it gets your client fewer years. If there's a harm in it, there's something where it will undercut some other argument, well, then yes, by all means. It's strategic, and we don't get to debate the strategy. Do you see what I'm saying? So that's why I think my question is a fair question and needs to be answered. Well, I think it is, Judge Hayes, and I certainly hope – I certainly hope to answer it. I think Your Honor is articulating a nothing-to-lose theory. Your Honor is indicating that doing this has no downside, so why not try it? The Supreme Court has explicitly said that that is not a rule of law for ethical purposes. We cite the Knowles v. Merzain's case in our brief in which the Supreme Court in 2009 explicitly said that there is no nothing-to-lose rule. The fact that an alternative course of action has no downside does not make a lawyer – But it does respond to the double-edged sword. And the point is – I mean you can always say – I mean I guess I'm having trouble with the notion that we can't analyze the lawyer's determination at all because we don't even know that he made a determination, right? Well, Your Honor, he did indicate in his affidavit that the whole strategy of the trial was self-defense. Now, Judge Haynes, you mentioned a moment ago that after the conviction came out, self-defense was out of the case at that point. I don't think that's correct, Judge Haynes. We know that the jury found at the kill-innocence stage that Mejia had not shown an objective fear for his life that would justify self-defense. But that's all we know about what the jury thought. It's reasonable to think that maybe the jury thought that Mejia had a subjective fear for his life that in his mind justified self-defense. Now, that's not an objective basis that gets you off the hook for murder as a matter of law. But it's possible that the jury could have wanted to show some mercy, show some leniency because he subjectively feared for his life. Let me try again because I just don't feel like we're communicating. The whole theory here is that he made a strategic call because he didn't want to argue inconsistent things. And all I'm trying to find out is what is inconsistent about sudden passion. That's all I'm asking, and I'm not getting an answer. So, please, could you answer that? Judge Haynes, I don't know what to say other than what I indicated earlier, that sudden passion is inconsistent with the facts of the case, with the fact of him arming himself and going to a fight. That is not what sudden passion is about. That's the inconsistency. I think a jury could look at that and say that story doesn't exist. But that's not what his lawyers are. His lawyers aren't getting up and going, look, he armed himself and went to the fight. He's arguing that the guy was afraid and all that. What is inconsistent with being afraid? What is inconsistent with – between asserting a sudden passion and being afraid? I don't know that there is an inconsistency on that specific level, Your Honor. I do think, though, that even if – I'm sorry. Let me ask you this, and I'm – Judge Haynes is asking very good questions, hard questions. This is – is it part – we're trying to get at what was the thought process of the attorney in not requesting the sudden passion instruction. Is it – if an attorney is thinking about that, there has to be an evidentiary basis for the jury to find sudden passion, right? That's correct. Otherwise you think, why am I asking for that? That's correct, Your Honor. Now, in the affidavit, the attorney said – and maybe Judge Davis was referring to this earlier – the attorney said there was no evidence of any provocation on behalf of the deceased, right? That's correct. Okay, and that was found to be credible by the State Habeas Court and not challenged here as far as I can tell. That's correct, Judge Johnson. That would be another basis to ground relief. Well, wouldn't the argument be he had a gun? I mean there was evidence. The defendant testified that the guy had a gun. That was apparently the only evidence of it. But wouldn't – I mean if you made the argument, it would be, look, this guy all of a sudden is going for his gun, and I got all excited and went with my knife. But the jury has apparently already found there wasn't any gun because they rejected the self-defense argument. So that argument, the lawyer could well think, that argument is not going to go. Well, if that's true, Judge Davis, then perhaps the easiest way to resolve this matter is on the prejudice prong rather than the performance prong. I see that I'm out of time. I'd be happy to speak to prejudice on rebuttal if the court would allow that. I mean if you're finished answering Judge Davis's question, that's great. If you're not, you can finish answering it. Thank you, Judge Haynes. On the prejudice issue, Your Honor, I think it's important to note that this jury threw the book at Mejia. They literally gave him the sternest possible sentence under the law. Life sentence, according to this jury, was not adequate, so they tacked on a $10,000 fine in addition to that. This jury was obviously outraged by his conduct and wanted to show him the full force of the law. Against that record, I think it's very unlikely to conclude that the jury was looking for some intermediate ground or some basis to show some leniency. They wanted to throw the book at him. They did throw the book at him. I just don't see why a sudden passion instruction. And AEDPA applies to our review of that determination as well. That finding no prejudice with respect to the failure to request a sudden passion instruction must not just be incorrect but an unreasonable application of Strickland v. Washington. That's correct. The attorney must have been incompetent, and the state court's determination of that must have been unreasonable. Okay. And of prejudice. Yes, that's correct. Because it can be incompetent and still not cause harm. That's correct. But in this case, I believe. It's not unusual to see that. Thank you. Thank you, Judge Haynes. Okay. Mr. Evo. May it please the court. If you don't mind starting with those two sort of what I'd call front points, which is, one, is it true that if we agree only in part with what Judge Atlas did, agree with the sudden passion but disagree with the manslaughter point that it's only every sentencing once you go through the habeas propriety? And is it true that AEDPA deference governs the whole analysis of Strickland, both prongs? Those are two questions. As to the first question, yes. If this court agrees only in connection with Judge Atlas' ruling on the sudden passion, it would just be a resentencing. Okay. And, Your Honor, Judge Haynes, I apologize if you asked the second question. The second question was whether there's full AEDPA deference on both the incompetence prong and the prejudice prong. Absolutely. Okay. Yes. Yes, Your Honor. First of all, I want to address some omissions from the state's briefing in connection with the prejudice prong, in connection with the sudden passion instruction. In the state's briefing, there is a glaring omission in connection with addressing the prejudice analysis. As explained in Appley's brief under Dale v. Quarterman, there's a unique prejudice analysis in the sentencing context. There have to be, in some, the petitioner has to show that there's a reasonable probability that the defendant's sentence would have been significantly less harsh taking into account four different factors, the factors being the defendant's actual sentence, the potential minimum maximum sentence, the placement of the actual sentence within the range of potential sentence, and any relevant mitigating or aggravating circumstances. In this case, Mejia actually received the maximum sentence of life. The range was five years to life. And it's very significant under this court's decision in Spriggs that he received a life sentence, the most severe sentence he could have received. And so there's certainly a prejudice analysis. Counsel, doesn't that indicate that the jury just didn't buy what Mejia was selling in this case? I mean, they could have said, you know, this is a tough case, and I sympathize with what happened, so I'm going to give him 15 years. I'm going to give him five. But they didn't. They threw the book at him. So why doesn't that cut against the argument that even assuming some kind of error on the sudden passion thing, the sudden passion instruction, even assuming there was an error, the state court wasn't unreasonable in finding no prejudice under Strickland because the jury just didn't buy it. Or wouldn't have bought a sudden passion instruction, I should say. Well, not necessarily. I mean we just don't know because Luna was ineffective in requesting a sudden passion instruction. There certainly was evidence to support sudden passion. After all, there was a – I mean who wouldn't be in terror if a gun was pulled on them? Well, of course, counsel made that argument. He made all the arguments for mitigation that you're making now. It just didn't – he didn't have that instruction, but he made the argument before the jury to decide a sentence. Is terror sudden passion, though? I thought sudden passion has to do with rage and anger. Terror is also a predicate. But doesn't that cut against your argument? No, no. Although he may have argued terror in connection with self-defense, he didn't – No, but in mitigation of sentence. If the sentence is a hearing, he made that argument. Right, right. But it would have helped considerably if he had had the instruction to the jury about sudden passion, which would have capped it. Let me ask you this. Would the – I meant to look this up, and I apologize, but would the jury have been told about the 20-year cap or would they have just been asked was he a victim of sudden – or under a sudden passion when this happened, yes or no, and then the effect of that is to cap the sentence? Would they be told of the cap? I don't believe that they would have been told of the cap. Okay. And, I mean, that arguably makes a difference because maybe they are mad at him, but they think he was a victim of sudden – in fact, they don't realize what they're doing when they say yes, and then he gets the cap later. They find life, and he caps it at 20 years. I'd be happy to file a supplemental – I mean, it's in the record, I'm sure. I meant to look it up. I just did not remember to do that. I'm sure that we have that there, but I think that could potentially make a difference, but maybe not. Go on.  In this case, there is evidence. Oh, well, no, I'm sorry. It wouldn't be in the record because he wasn't given the instructions, so you would need to file a 28-J on that, whether they would have been told. I'll do that, Your Honor. That's why I didn't find it. I just realized that. Counsel, this is very helpful. I just want to understand. You're going through these factors for considering whether the sentence was – whether it's prejudiced with respect to the sentence. Yes, sir. Are these the factors that a Texas court would apply in determining whether there was prejudice or not with respect to the sentence? Is that what we're talking about? It's actually a Fifth Circuit case that set forth these factors. Dale v. Quarterman. Right, but what I'm getting at is this court is reviewing whether the state court was unreasonable in determining whether there was prejudice with respect to the sentence. We're just one step removed from this. I understand, Your Honor. That's a good point. Again, I would be happy to talk to you. Well, Quarterman is the defendant, and that's Davis, so it had to have been a state habeas. Please go on. I mean it's helpful to think about what the state courts have to think about. In this case, Mejia, he did testify. He explained that he felt his life was in danger because he saw a gun pulled on him, and he apparently, out of terror, stabbed him, tore his wounds, and then ran away. I think there's plenty of evidence for the prejudice analysis in connection with these prejudice analysis factors to show there's actually prejudice because Luna did not request the sudden passion instruction. In the states— Or just to think of it from the other side, which I think we have to do, which the state court might have said, well, sure, I understand that, but the jury might have also said he armed himself with a knife and went to the bar looking for trouble. And so the jury might have said, yeah, I just don't believe you. I don't believe your story about the gun. I understand, Your Honor. But whenever self-defense—and I mentioned this, and this was mentioned in Mejia's briefing. Whenever there's self-defense raised, it's very rare when you also don't have a sudden passion instruction or a sudden passion issue raised also. They go hand in hand, and it's up to the jury. Can you explain why that is? I saw that you cited some Texas cases on that. Just explain to me why is that? Why do they often go hand in hand? Well, the provocation will oftentimes lead a person to either respond either with self-defense or with a sudden passion. In other words, whenever there's provocation, such as somebody pulling out a gun from underneath their shirt, that's going to create terror and cause you to do two things, to defend yourself and also perhaps not to think as clearly as you might ordinarily do. And it's for that reason that they go hand in hand. I see. I see. You were provoked, and your response may not have been reasonable, so you can't claim self-defense but maybe the sudden passion. Yes, Your Honor. What do we do with the fact that the state habeas court found credible the attorney's affidavit that said there was no evidence of any provocation on behalf of the deceased? You haven't challenged that finding, have you? That's correct, Your Honor. We have not challenged that finding, but that is not a credible finding. I mean it's certainly in tension with the record. Right, but wouldn't that be insulated by AEDPA? You'd have to challenge that as an unreasonable determination of the facts. That's correct, Your Honor. You haven't done that? That's correct, Your Honor. I just looked at Dale B. Quarterman, and it is, in fact, an AEDPA deference case, so you are giving us the right factors. Thank you for that. So we don't need a 28-J on that. But I would like, unless your counsel opposite knows the answer, I would like an answer to the question of whether the jury would have simply been asked, was he the victim of sudden passion defined as so forth, yes or no, or would the jury have been told that if you answer yes, then you can only consider a sentence of X to Y years? Do you see the difference between that? I do, yes. Because I can envision the jury just going, yeah, well, he did seem to be kind of mad, yes, and going on not knowing that someone was giving him a huge break. And that would be different than if they knew, particularly in line with the argument that they threw the book at him. They may have said, well, we ain't answering that yes because then we can't throw the book at him. But if they didn't know, and that answer wouldn't be answered by the record since he wasn't given the sudden passion defense, but I'm sure there's an answer somewhere. Yes, Your Honor. Yes. I'll look into that. In the reply brief that was filed by the state, the state relies heavily on the cases in Drury and Shanklin and in claims that Drury and Shanklin determine the outcome in this case. First of all, I want to point out that Drury and Shanklin only address the lesser-included offense issue. It doesn't even touch the sudden passion issue that we have here in this case. In connection with the lesser-included offense issue that we have in this case, Drury and Shanklin are easily distinguishable. In the Drury case, Craig Washington, the counsel in that case, he expressly said that he and his client were pursuing an all-or-nothing strategy. We don't have that in this case. Yeah, but again, to me it's a little – I think that the construction of the lawyer's statement that you put on it and that apparently the district court accepted that he didn't know he could ask for the lesser-included is kind of the less likely. It's more likely he meant the all-or-nothing. Because there's a lot of – I mean, look, I watched state court trials for eight years as a judge, and there were a lot of times when you could ask A or B, and they tried to argue both, and it was just painful for them to try to have it both ways. And then I had to submit the Drury questions that way, but, I mean, it resulted in a flame-out for them. So I can see how you might know you have the legal right to do something, but you just think, I don't know how the heck I can get up and argue two opposite positions. So if that's a possibility or one option, then don't we have to go with the option the state court picked, which is that he knew what he was doing. He just didn't feel like this was a good way to approach things, trying to say you can call me Ray or you can call me Jay. Your Honor, the – but as explained in this court's precedent and by the U.S. Supreme Court, this post hoc rationalization, the state is advanced, it's not permissible when the counsel states exactly what his strategy is. Yeah, and he did. You're construing that as lack of knowledge of the law. The state court construed it as all or nothing strategy. Why are we not required to give deference to that construction of what the lawyer said? If the lawyer said, I did not know the law, man, I found out after the trial, wow, you can ask for a lesser included offense, who knew? Then we would have to go with your construction. But he said something that's okay at best for you or ambiguous. I don't even think it's ambiguous, but it's best for you ambiguous. The state court says he knew what he was doing, he just thought it was inconsistent factually. Well, when Luna made his answer in his affidavit, he was saying self-defense was the strategy for the whole case, and he used that as an explanation for why he didn't request either a sudden passion instruction or the lesser included offense instruction. It just seems to me under the circumstances that he would have expressly said he was pursuing an all or nothing strategy if he actually was doing that. The true reasonably competent attorney might be pursuing an all or nothing strategy, but the way that he answered the question, you would think that a reasonably competent attorney writing such an affidavit would actually say they were pursuing an all or nothing strategy just as to the lesser included offense and not as to the sudden passion instruction. All right. Let me ask you on the sudden passion. What is your answer to the Knowles case that counsel Opposite sided? You know, the no harm, no foul, so should have done the sudden passion. What's your response to that? He says that's not good enough to overcome a pedeference. Your Honor, I'm going to have to read the Knowles case again, and I'd be happy to follow supplemental. It was the nothing to lose point. It was his point. The counsel's point was that the Supreme Court had said that there is no requirement that an attorney pursuing nothing to lose an instruction that's essentially a nothing to lose. It's like, well, I might as well throw it out there. Who knows? I got nothing to lose. And the Supreme Court has never required that. So how do you respond to that argument? I mean, in other words, come at it this way. What makes us say he had to request the sudden passion in order to be competent? There was no double-edged consequence in requesting the sudden passion. See, that is a nothing to lose argument. But I'm just having trouble with the notion that it just seems like you can't ever attack competence other than on the theory that he really didn't know he had that option. I'm sorry. Go ahead. We're just trying to—I think another way to ask that question is, how can you eliminate a strategic consideration from Luna not asking for the sudden passion instruction? In his affidavit, if what he's saying is true, that, look, everything hinged on self-defense, there was no provocation from the defendant, and when I got to the penalty phase, my strategy was saying, look, I mean, the guy, you know, yeah, he did it, he was, you know, he didn't hide that he did it, he turned himself over to the police, essentially throwing himself on the mercy of the jury, and the jury didn't buy it. How do you—isn't it part of his strategy not to then inject this issue of sudden passion that sort of muddies all that, I guess, is what the other side is saying? I don't see how it could muddy it, given the fact that you have, as I mentioned earlier, the same predicate for self-defense is also the same predicate for sudden passion. They just seem to go hand in hand. Well, except he brought a knife to the bar. I mean, I can see the prosecutor coming back on rebuttal and say, how sudden is it when the guy sticks a knife in his belt before he goes to the bar and he walks over to the bar? How sudden is that? Unfortunately, there's probably a number of people—well, not a number, but there are some people that take a knife with them whenever they go to various places in certain parts of town, and they don't oftentimes use it. Yeah, the testimony was that he had a specific reason for it, right, that he was afraid of a confrontation with— Yes, Your Honor. Was it with a decedent? Or was it—I'm just not remembering the facts. There was testimony that there was a possibility of a confrontation. With the decedent or not. I don't remember. I don't believe it was with the decedent, but he did anticipate a confrontation, Your Honor. He wore a protective brother, as I recall. Yes, Your Honor. Yes, Your Honor. So it was in connection with Torres specifically, but he did anticipate a confrontation. And so he brought the knife. I think what's different about this case from Drury and Shanklin is that in Drury and Shanklin, they both involved the defendant using a gun. He was using a knife against somebody that had a gun, and I think that's an important distinction to take into account. The other distinguishing factor from this case in connection with Shanklin is that in Shanklin, the prosecutor also offered an affidavit to say that she thought that the defense counsel was probably pursuing an all-or-nothing strategy. There was no such affidavit introduced by the prosecutor in the Heis case. Okay. Thank you. I pulled up no's. I don't think we're going to need further briefing on it. I remember this case now. But we will need the answer on the side of passion. Yes, Your Honor. Thank you, Your Honor. Unless Mr. Hawkins can illuminate the issue. Do you know that answer? What is the jury told on sudden passion? Are they told it will cap the sentence, or are they just asked, hey, was there sudden passion, yes or no? Or are they told the effect of the answer? I'm afraid I don't know the answer, Judge Hange. It's not on the record in this case, as you speculated correctly earlier. I understand counsel will submit a 28-G letter. I'm happy to respond to that letter after it comes in. I would note that the record does show that the jury was submitted several boilerplate verdict forms. I think there were six or seven in the record. And they do list, one of them lists that the penalty is life with a $10,000 fine. Right, because they have to award a verdict within the range. But what I'm saying is if sudden passion would have the effect of lowering that range, I'm aware. I was a judge in a civil court, so I didn't give these instructions or I would know the answer. We didn't always tell the jury the effect of their answers. And, in fact, lawyers were precluded from telling jurors the effect of their answers. So they might be asked a seemingly innocent question, when did this happen or something, and that's going to trigger a statute of limitations defense, but they're not told that. They're asked all these other questions about damages and all this stuff that becomes irrelevant, and they're not told that. So that's why I think it is possible that they're simply asked straight up was there a sudden passion, which is defined as follows, yes or no, and not told anything about the range. They're just given the five to life, and they give the thing, and then it becomes a cap on that. But I don't know. That's what I don't know. And I don't know that it's case determinative, but I'd like to know the answer. Looking at Knowles, and this was why I didn't remember it the way you said, what Knowles says is there is not a bright-line rule that says any time you can prove that the lawyer had nothing to lose, he's incompetent by not doing something. They just said that is subsumed under the regular Strickland analysis. So it's not that nothing to lose is irrelevant. It's that it's not a separate, independent, bright-line rule. It's just part of the Strickland analysis. I think that's fair, Judge Haynes. But the inquiry here is did the state habeas court violate clearly established law as announced by the Supreme Court of the United States? And I think Knowles says the answer is no. Well, no. They didn't violate it simply by not applying a bright-line nothing to lose. However, it still can be that the lawyer was incompetent in part because in Knowles, the issue was some sort of insanity defense or whatever. I'm reading it quickly, obviously, because I'm sitting up here. I've looked at Knowles before, but anyway, looking at it quickly. But, you know, again, there's a strategy and so on and so forth. I think when we're arguing this whole double-edged sword, if there's only one edge to the sword, I do think that has impact under a regular, plain old, no bright-line Strickland rule. Well, again, Judge Haynes, I think the inquiry is not was there a better option for Luna. Would it have been better to request sudden passion? The question is, is what he did unreasonable? And I would ask the court to look at what he did do. I think it's important to review. But don't you think it's relevant that it would have been—they didn't say it was irrelevant, the nothing to lose. They just said it's not a bright line. So wasn't it relevant that he had nothing to lose, so to speak? Yeah, I think that when you're evaluating a lawyer's performance, it's important to look at all of the factors in the record. And when we're evaluating whether it's unreasonable to have found him to have acted competently, isn't that still part of the analysis? I think that's fair, Judge Haynes. I think that's right. But I think even setting all that aside, there's ample basis to reverse as to the sudden passion issue. First, when we look at what Luna actually did do, I think it's important to review his sentencing summation. This is at pages 1057 through 1062 of the record. He reminded the jury that every case is different. He explicitly emphasized the discretion inherent in the law and advised the jury that they could pick any sentence between five years and 99 years. He reminded the jury of their duty to consider the full range of options. He talked about the context of the fight. He argued that Mejia's background was relatively clean, his criminal background. He explained that Mejia committed the stabbing while trying to run away. He said there was no initial aggression by Mejia. And he emphasized that Mejia had cooperated with the police. Now, in light of all that, he asked the jury to show leniency, to show a sentence of 10 to 20 years. That was the strategy that he pursued, and I think that strategy is eminently reasonable. He thought, in his professional judgment, that was the best way to get a better sentence. It didn't work.  No, but it is relevant to prejudice. Exactly, and I think there is no prejudice in this case, Your Honor, for the reasons that we've discussed earlier. Even if Luna had requested sudden passion destruction, it was simply not. I get that that's your argument. Okay. Fair enough. Well, very good arguments. I notice, Mr. Ebau, that you are court appointed. We appreciate your accepting the appointment. And, of course, Mr. Hawkins, we appreciate your service as well. Thank you to both of you. The case is submitted, and that concludes all of the oral evidence.